1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MARQUIS JACKSON, an individual,

       Plaintiff,

   vs.

ERIC ADEN, in his official capacity as Sheriff of the Okaloosa County Sheriff's Office; JESSE HERNANDEZ, individually; ELIZABETH ROBERTS, individually; PIERRE BATISTE, individually; JERALD RHEINHARDT, individually; TRENT ZELLARS, individually; ROBERT WAGNER, individually; JAVIER REYNA, individually; and DOES 1-50, inclusive, individually,

       Defendants.

Case No.: 3:24-cv-00429-TKW-ZCB

**SECOND AMENDED COMPLAINT FOR DAMAGES**

42 U.S.C. § 1983: Fourth Amendment
42 U.S.C. § 1983: Failure to Intervene
42 U.S.C. § 1983: Supervisory Liability
Pendent Tort Claims

**<u>JURY TRIAL DEMANDED</u>**

## <u>INTRODUCTION</u>

1.  This civil rights case arises out of the grossly unjustified use of deadly force against Marquis Jackson by deputy Jesse Hernandez and sergeant Elizabeth Roberts of the Okaloosa County Sheriff's Office. On November 12, 2023, Mr. Jackson and his then-girlfriend had a disagreement which resulted in law enforcement being called to the apartments at or around 1025 McLaren Circle, Fort Walton Beach, Florida. Deputies Jesse Hernandez and Javier Reyna contacted Mr. Jackson, performed two pat-down searches, and confirmed Mr. Jackson was unarmed. Mr. Jackson was then handcuffed and placed in the back of a patrol car. Thereafter, Deputy Hernandez and Sergeant Roberts fired twenty-two bullets without warning at the patrol car while Mr. Jackson was restrained in the back seat.

2.      At the direction and order of Sergeant Pierre Batiste, Deputies Jerald Rheinhardt and Trent Zellars proceeded to fire several less lethal rounds at the patrol car windows as Mr. Jackson remained handcuffed in the back seat. Deputy Wagner ignored Plaintiff's requests for help for over twenty (20) minutes after deadly force was used. Eventually, Mr. Jackson was removed from the patrol car. Mr. Jackson was searched a third time for weapons and then taken to the hospital for medical evaluation. Mr. Jackson was then transported to Okaloosa County Courthouse and was detained in a cell for several hours before being released with no charges. Mr. Jackson sustained no visible physical injuries but continues to suffer from mental and emotional anguish because of this horrendous ordeal.

3.      Defendants' conduct was heinous and intolerable. Mr. Jackson never threatened any deputy, nor made any attempt to flee. Mr. Jackson thereby posed no credible threat to the safety of any deputy or other. Mr. Jackson was unarmed and complied with deputies' commands without issue. Moreover, Mr. Jackson surrendered to the deputies' authority, was patted down twice for weapons, handcuffed, and placed in the back of a patrol car without any resistance. Nonetheless, Mr. Jackson was unarmed, restrained, and locked in the back seat of a patrol car when Deputies fired nearly two dozen bullets into the patrol car, followed by a volley of less lethal munitions. The Defendants' actions were unreasonable and grossly excessive under the circumstances, and in violation of Mr. Jackson's constitutional rights.

4.      Accordingly, this action seeks compensatory and punitive damages from Defendants for flagrantly violating Mr. Jackson's rights under the United States Constitution and state law in connection with the merciless use of lethal and non-lethal force inflicted upon Mr. Jackson.

**SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

5.     This action arises under Title 42 of the United States Code § 1983. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law. The unlawful acts and practices alleged herein occurred in the City of Fort Walton Beach, County of Okaloosa, Florida, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. § 1367.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred within this district.

## PARTIES

7.     Plaintiff MARQUIS JACKSON (hereinafter "Plaintiff" or "Mr. Jackson") is and was at all times mentioned herein, an individual residing in the state of Florida and is a United States Citizen.

8.     Defendant ERIC ADEN (hereinafter "Defendant Aden") is and was at all times mentioned herein, the Sheriff of the Okaloosa County Sheriff's Office, and is sued in his official capacity.

9.     Defendant JESSE HERNANDEZ (hereinafter "Defendant Hernandez") is and was at all times mentioned herein, a sheriff's deputy for the Okaloosa County Sheriff's Office, and is sued individually.

10.     Defendant ELIZABETH ROBERTS (hereinafter "Defendant Roberts") is and was at all times mentioned herein, a sergeant for the Okaloosa County Sheriff's Office, and is sued individually.

11.     Defendant PIERRE BATISTE (hereinafter "Defendant Batiste") is and was at all times mentioned herein, a sergeant for the Okaloosa County Sheriff's Office, and is sued individually.

12. Defendant JERALD RHEINHARDT (hereinafter "Defendant Rheinhardt") is and was at all times mentioned herein, a sheriff's deputy for the Okaloosa County Sheriff's Office, and is sued individually.

13. Defendant TRENT ZELLARS (hereinafter "Defendant Zellars") is and was at all times mentioned herein, a sheriff's deputy for the Okaloosa County Sheriff's Office, and is sued individually.

14. Defendant ROBERT WAGNER (hereinafter "Defendant Wagner") is and was at all times mentioned herein, a sheriff's deputy for the Okaloosa County Sheriff's Office, and is sued individually.

15. Defendant JAVIER REYNA (hereinafter "Defendant Reyna") is and was at all times mentioned herein, a sheriff's deputy for the Okaloosa County Sheriff's Office, and is sued individually.

16. Plaintiff is ignorant of the true names and capacities of those Defendants named herein as DOES 1 through 25, inclusive. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 25, inclusive, are legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, or willful misconduct, including the negligent, careless, deliberately indifferent, intentional, willful misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiff will seek to amend this Complaint to set forth said true names and identities of DOES 1 through 25, inclusive, when they have been ascertained.

**SECOND AMENDED COMPLAINT**

17.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 26 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant so named was employed by Defendants County and OCSO at the time of the conduct alleged herein. Plaintiff alleges that each of Defendants DOES 26 through 50 were responsible for the training, supervision and/or conduct of the sheriff's deputies and/or agents involved in the conduct alleged herein. Plaintiff alleges that each of the Defendants DOES 26 through 50 were also responsible for and caused the acts and injuries alleged herein. Plaintiff will amend this Complaint to state the names and capacities of DOES 26 through 50, inclusive, when they have been ascertained.

## ADMINISTRATIVE PREREQUISITES

18.     Plaintiff is required to comply with the administrative procedures set forth in the Florida Tort Claims Act. Plaintiff filed a claim against the County of Okaloosa, Okaloosa County Sheriff's Office, and Florida Department of Financial Services, on March 27, 2024.

19.     The claim is rejected by operation of law on September 23, 2024.

20.     Plaintiff therefore exhausted all administrative remedies pursuant to Title XLV, Chapter 768, Section 28, of the Florida Statutes.

## PRELIMINARY ALLEGATIONS

21.     The Okaloosa County Sheriff's Office is a public entity and operates under the command and control of Defendant Sheriff Eric Aden. Defendant Aden is being sued in his official capacity as Sheriff of the Okaloosa County Sheriff's Office under Title 42 U.S.C. § 1983 for violations of the Fourth Amendment of the United States Constitution, Florida state law, the Florida Tort Claims Act, and the Government Code, for the acts and omissions of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 50, inclusive, and

each of them, who at the time they caused Plaintiff's injuries and damages, were duly appointed, qualified and acting, sheriff's deputies, officers, employees, and/or agents of Okaloosa County Sheriff's Office under the command and control of Defendant Sheriff Aden, and were acting within the course and scope of their employment and/or agency.

22.    Each of the Defendants caused and is responsible for, the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating, or failing to promulgate, policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents, officers, deputies, medical providers and employees under their direction and control.

23.    Whenever and wherever reference is made in this Complaint to any act by Defendants DOES 1 through 50, such allegations and references shall also be deemed to mean the acts, and failures to act, of each Defendant DOE Deputy, individually, jointly, or severally.

## FACTUAL ALLEGATIONS

24.    On November 12, 2023, at approximately 8:40 a.m., Plaintiff Marquis Jackson and his then-girlfriend got into a disagreement resulting in law enforcement responding to the apartments at or around 1025 McLaren Circle, Fort Walton Beach, Florida. Deputies Jesse Hernandez, Javier Reyna, Deja Riley and Sergeant Roberts were the first to respond.

25.    Sergeant Roberts, along with deputies Hernandez and Reyna, spoke with the reporting party about the vehicle dispute. Mr. Jackson walked down

**SECOND AMENDED COMPLAINT**

McLaren Circle toward the deputies. Mr. Jackson made no threats to any deputies or others, nor made any aggressive movements or furtive gestures.

26.    Deputies Hernandez and Reyna immediately contacted Mr. Jackson. Deputies asked about a vehicle reported stolen by Mr. Jackson's then-girlfriend. Mr. Jackson informed the deputies that the car was parked near the area and the key fob was in his pocket. Mr. Jackson presented the key fob to the deputies without issue.

27.    Sergeant Roberts directed Deputies Hernandez and Reyna to detain Mr. Jackson. Mr. Jackson offered no resistance.

28.    Deputy Hernandez performed the first pat-down search of Mr. Jackson's clothing in front of Deputy Reyna and Sergeant Roberts. No weapons were found.

29.    Deputy Reyna performed a second pat-down search of Mr. Jackson. For a second time, no weapons were found on Mr. Jackson. Deputy Reyna then gave Mr. Jackson *Miranda* warnings.

30.    Deputies Hernandez and Reyna handcuffed Mr. Jackson and placed him in the back seat of Deputy Hernandez's patrol car. Mr. Jackson made no threats, offered no resistance, and fully complied.

31.    Mr. Jackson was sitting handcuffed in the back of Deputy Hernandez's patrol car when, without warning, more than twenty-two (22) bullets were fired at Mr. Jackson in the backseat of the patrol car. Unbeknownst to Mr. Jackson, Deputy Hernandez exclaimed he was hit by a bullet shot by Mr. Jackson from inside the patrol car. This led to Deputy Hernandez and Sergeant Roberts firing nearly two-dozen lethal rounds at Mr. Jackson who was handcuffed inside the patrol car.

32.    Mr. Jackson was in complete terror as bullets berated the patrol car and glass shattered from windows. Mr. Jackson had no understanding why deputies were shooting at him. As shards of glass and plastic dispersed through the backseat, Mr. Jackson attempted to duck down in an effort to avoid being struck by gunfire by

leaning his upper torso forward toward his knees but was restricted in his movements because of his hands being cuffed behind his back. Mr. Jackson could hear the bullets pierce the glass and feel the shards of glass and plastic bursting around him. Mr. Jackson prayed for his life.

33.    Sergeant Roberts requested less lethal weapons over the radio. In response, Sergeant Pierre Batiste arrived on scene. Mr. Jackson remained handcuffed in the patrol car completely terrorized.

34.    Deputy Wagner issued commands to Mr. Jackson to put his hands up. Mr. Jackson shouted for help and explained that he could not put his hands up because he was handcuffed.

35.    Sergeant Batiste assumed command and ordered Deputies Rheinhardt and Zellars to shoot out any of the remaining glass of the patrol car windows with less lethal munitions.

36.    Deputy Wagner communicated to Mr. Jackson that deputies had to shoot out the windows before they could come to his aid. Mr. Jackson continued to yell for medical assistance that he had been struck. Deputies then instructed Mr. Jackson to sit up in the back seat while they shot out the windows. Mr. Jackson again tried to take cover by bending forward with his arms cuffed behind him toward his knees.

37.    Mr. Jackson was ordered to put his hands outside the window several times despite deputies knowing his hand were cuffed behind his back and physically could not put his hands out the window. For over twenty (20) minutes after lethal force was used, Mr. Jackson was commanded by Deputy Wagner to show his hands out of the window and sit up before aid could be given.

38.    Nevertheless, Sergeant Batiste directed Deputies Rheinhardt and Zellars to shoot out the windows with less lethal munitions. Mr. Jackson was

**SECOND AMENDED COMPLAINT**

subjected to less-lethal force against his will and without legal justification or provocation.

39.    Several minutes later, deputies removed Mr. Jackson from the patrol car with his hands still cuffed behind his back. Deputies patted Mr. Jackson down for a third time. Again, no weapons were found on Mr. Jackson; he was unarmed.

40.    Mr. Jackson was transported to the hospital for medical evaluation and clearance for booking. Although, Mr. Jackson miraculously did not sustain any visible physical injuries, Mr. Jackson continues to suffer from extreme mental and emotional anguish as a result of the horrendous use of lethal and less-lethal force inflicted against him while he was restrained, unarmed, and locked in a patrol car.

41.    Plaintiff was terrorized by this experience and suffers from severe emotional and mental distress from the infliction of deadly force and less lethal force while handcuffed and detained in the back of a patrol car.

42.    Plaintiff is informed and believes, and thereon alleges, that Defendants Hernandez and Roberts proceeded to use excessive and deadly force against Plaintiff without warning and without provocation, and to assault and batter Plaintiff through acts that include but are not limited to, unjustifiably using deadly force by firing twenty-two lethal rounds into the patrol car that Plaintiff was detained in handcuffs.

43.    Plaintiff is further informed and believes, and thereon alleges, that Defendants Rheinhardt and Zellars proceeded to use less-lethal force against Plaintiff thereafter, without provocation, to assault and batter Plaintiff through acts that include but are not limited to, unjustifiably shooting out the patrol car windows with less-lethal munitions while Plaintiff remained handcuffed in the back seat.

44.    Even though Plaintiff posed no credible threat to any person, Defendant Deputies, or any other, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 50, disregarded their training, improperly assessed the situation, and ignored federal and state law, and agency policy.

Defendant Deputies' use of lethal and less-lethal force against Plaintiff was grossly excessive under the circumstances, and thereby, unconstitutional under the law.

45.     Plaintiff is informed and believes, and thereon alleges, that upon arriving at the scene, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 50, while acting under the color of state law, and in the course and scope of their employment with the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden, negligently assessed the circumstances presented to them when Defendants Hernandez, Roberts, and Reyna contacted Plaintiff.

46.     At no time during the encounter, did Plaintiff pose any reasonable or credible threat of violence to Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, or any other deputy, nor did he do anything to justify the use of deadly force and less-lethal force inflicted against him. Plaintiff was unarmed, made no aggressive movements or furtive gestures, and complied with the deputies' commands without objection or resistance.

47.     Plaintiff had no weapons on his person during the entire encounter. Deputies confirmed through two pat-down searches that Plaintiff was unarmed before they put Plaintiff in handcuffs and detained him in Deputy Hernandez's patrol car. Nonetheless, Deputies Hernandez and Roberts fired nearly two dozen bullets at Plaintiff handcuffed in the patrol car. This infliction of deadly force was followed by Deputies Rheinhardt and Zellars firing several less-lethal rounds into the patrol car to shoot out the windows. All force inflicted against Mr. Jackson was done without consideration for his safety or well-being. The extreme levels of force exercised against Plaintiff were heinous and grossly excessive. Such force is unlawful.

48.     Plaintiff made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable deputy that he had the

will, or the ability, to inflict substantial bodily harm against any individual at the time deputies encountered him. Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna, were never faced with any circumstances during the encounter with Plaintiff which would have led a reasonable deputy to believe that Plaintiff posed an imminent risk of death or serious bodily injury to any person at the time lethal and less lethal force were used.

49.    Moreover, it should be clear to a reasonable deputy that using lethal force, that is, firing twenty-two lethal rounds at a handcuffed subject, could cause serious bodily injury or death, such that emergency medical services or life-saving aid may be necessary. Nonetheless, Plaintiff was ordered to put his hands outside the window while Defendants Rheinhardt and Zellars shot out the patrol car windows using less-lethal munitions. Consequently, Plaintiff remained handcuffed in the patrol car and unattended to. Plaintiff remained in complete terror for several minutes without any medical attention. Eventually, Mr. Jackson was removed from the patrol car, still in handcuffs, and was tended to by medical personnel.

50.    After a significant and appreciable period of time had passed following the lethal and less-lethal force encounter, Plaintiff was transported to a local hospital for medical evaluation. Plaintiff was transferred to the Okaloosa County Courthouse thereafter. Mr. Jackson was detained in a jail cell for several hours before being released with no criminal charges.

51.    At all material times, the actions and omissions of each Defendant were conscience-shocking, reckless, and deliberately indifferent to Plaintiff's rights, and in the alternative, negligent and objectively unreasonable.

52.    Plaintiff also suffered extreme psychological distress and injury as a result of this ordeal. Plaintiff suffered and still suffers from symptoms including, but not limited to, fear, trauma, anxiety, stress, depression, humiliation, and emotional distress as a result of the incident.

53.    During the incident, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, worked together as a group to back each other up, provide tacit approval for the incident, and support, assist, and encourage one another's actions, in the course and scope of their employment with the Okaloosa County Sheriff's Office under the command and control of Defendant Sheriff Aden.

54.    Moreover, each of the Defendant Deputies failed to intervene or prevent harm when his or her colleagues were depriving Plaintiff of his constitutional rights as stated in this Complaint. By failing to intervene, each of the Defendant Deputies additionally violated Plaintiff's constitutional rights.

55.    Plaintiff is informed and believes, and thereon alleges, Defendants violated standard police practices and training during the performance of their duties as sheriff's deputies of the Okaloosa County Sheriff's Office.

56.    Plaintiff is informed and believes, and thereon alleges, that the Defendant Deputies failed to maintain situational awareness before using lethal and less-lethal force against an unarmed, handcuffed subject detained in a patrol car.

57.    The actions and omissions of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 50, inclusive, were objectively unreasonable under the circumstances, without legal justification or other legal right, done under color of law, within the course and scope of their employment as sheriff's deputies, law enforcement officers, detectives, and/or agents of the Okaloosa County Sheriff's Office, and pursuant to the command and control of Defendant Sheriff Aden.

58.    Plaintiff is informed and believes, and thereon alleges, that Defendants Sheriff Aden and DOES 26 through 50, inclusive, breached their duty of care to the public in that they have failed to discipline Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive. Their failure

to discipline Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, demonstrates the existence of an entrenched culture, policy and/or practice, of promoting, tolerating and/or ratifying with deliberate indifference, the making of improper detentions and arrests, the use of excessive force, including deadly force, and the failure to intervene to prevent further violations of the constitutional rights of Okaloosa County Citizens.

59.    Plaintiff is informed and believes, and thereon alleges, that members of the Okaloosa County Sheriff's Office, including but not limited to, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, and/or each of them, have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of using excessive, arbitrary and/or unreasonable force against individuals, including but not limited to, Plaintiff.

60.    Plaintiff is informed and believes, and thereon alleges, that the Okaloosa County Sheriff's Office knew or had reason to know by and through Defendant Sheriff Aden, by way of actual or constructive notice, of the aforementioned policy, culture, pattern and/or practice, and the complained of conduct and resultant injuries/violations. On information and belief, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna, violated department policies. On information and belief, Defendant Sheriff Aden failed to take any action to address the repeated patterns of inappropriate conduct demonstrated by Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna, nor the inappropriate supervision of deputies by Defendant Sergeants Roberts and Batiste. Such failure not only demonstrates Defendant Deputies' complete disregard for rights, safety and welfare of the citizens of Okaloosa County, but it also demonstrates Defendant Sheriff Aden's complacency and ratification of the Defendant Deputies' conduct.

61.     At all material times, the actions and omissions of each Defendant were conscience-shocking, reckless, and deliberately indifferent to Plaintiff's rights, and in the alternative, negligent and objectively unreasonable, and thereby, unlawful.

## DAMAGES

62.     As a consequence of Defendants' violations of Plaintiff's federal civil rights under 42 U.S.C. §1983 and the Fourth Amendment, Plaintiff was physically, mentally, emotionally, and financially, injured and damaged as a proximate result of Defendants' wrongful conduct.

63.     Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that he is the prevailing party in this action under 42 U.S.C. §§ 1983 and 1988.  Plaintiff is also entitled to punitive damages under 42 U.S.C. §§ 1983 and 1988.

## FIRST CAUSE OF ACTION – COUNT I
### (42 U.S.C. Section 1983)
### (Violation of the Fourth Amendment of the U.S. Constitution - Excessive Force)
### (Plaintiff MARQUIS JACKSON Against Defendants HERNANDEZ, ROBERTS, RHEINHARDT, ZELLARS, and DOES 1-25)

64.     Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

65.     42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

66.     Plaintiff has firmly established rights under the Fourth and Fourteenth Amendments to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, to be free from excessive, including deadly, force being used against him.

67.     Defendants' actions as described herein resulted in the deprivation of these constitutional rights.

68.     Defendants Hernandez and Roberts, acting in the performance of official duties as a sheriff's deputy and sergeant of the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden, used deadly force against Plaintiff by firing more than twenty-two bullets at Plaintiff who was handcuffed and detained in the back of Defendant Hernandez's patrol car. Such deadly force was unjustified and entirely unreasonable under the circumstances.

69.     Moreover, Defendants Rheinhardt and Zellars, while acting in the performance of official duties as sheriff's deputies of the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden, used less-lethal force against Plaintiff by firing several less-lethal munitions at the patrol car as a means to shoot out the windows.

70.     Mr. Jackson asked for help for over twenty (20) minutes after lethal force was used but was commanded by Deputy Wagner to show his hands out of the window and sit up before aid could be given.

71.     Defendants Rheinhardt and Zellars proceeded to use less lethal force at the direction of Sergeant Batiste, checking on Mr. Jackson's safety, and before medical aid was rendered.  Such force was also unjustified and entirely unreasonable under the circumstances.

72.     Plaintiff posed no credible threat of harm to Defendant Deputies or any deputy or other, when Defendants Hernandez and Roberts fired nearly two dozen bullets at Plaintiff while his was handcuffed and restrained in the backseat of the

**SECOND AMENDED COMPLAINT**

Defendant Hernandez's patrol car, and without any assessment, warning, or provocation.

73.    Moreover, Plaintiff posed no credible threat of harm to Defendant Deputies or any deputy or other, when Defendant Batiste ordered Defendants Rheinhardt and Zellars to shoot out the patrol car windows using less-lethal munitions while Plaintiff had been subjected to deadly force, was still handcuffed and detained in the patrol car, and had received no medical attention.

74.    Defendants' unjustified uses of deadly and less-lethal force deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures, as guaranteed to Plaintiff under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment of the United States Constitution.

75.    At no point during the encounter did any Defendant Deputy intervene to prevent Defendants Hernandez, Roberts, Rheinhardt, or Zellars from using lethal force against an unarmed, handcuffed subject, nor the use of less-lethal force against him thereafter. Lethal and less-lethal force that was clearly excessive and unjustified under the circumstances.

76.    Defendant Deputies, acting under the color of statute, ordinances, regulations, customs and usages of the State of Florida, as deputies of the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden knew that the use of deadly and non-deadly force in these circumstances was unjustified, and was thereby unconstitutional under clearly established law.

77.    The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer extreme pain and suffering, and mental and emotional anguish.

**SECOND AMENDED COMPLAINT**

78.    Defendants' conduct alleged herein was willful, wanton, malicious, intentional, and deliberate, and was done with a reckless disregard to the constitutionally protected rights, welfare, and safety of Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### <u>SECOND CAUSE OF ACTION – COUNT II</u>
**(42 U.S.C. Section 1983)**
**(Failure to Intervene)**
**(Plaintiff MARQUIS JACKSON Against Defendants HERNANDEZ, ROBERTS, BATISTE, RHEINHARDT, ZELLARS, REYNA, WAGNER and DOES 1-25)**

79.    Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

80.    42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

81.    Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner failed to intervene or prevent harm to Mr. Jackson when his or her colleagues were depriving Plaintiff of his constitutional rights. Specifically, Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner failed to intervene when Defendants Hernandez and Roberts used deadly force against an unarmed, handcuffed subject, or when Defendants Rheinhardt and Zellars used less-lethal munitions to shoot out the car windows immediately after deadly force was used. Not one deputy intervened when deadly force and less-lethal

**SECOND AMENDED COMPLAINT**

rounds were inflicted against Mr. Jackson while he was handcuffed, detained, and unarmed in Defendant Hernandez's patrol car.

82.    Defendants Roberts, Hernandez and Reyna were present during the first two pat down searches performed first by Defendants Hernandez, and second, by Defendant Reyna. Deputy Reyna issued *Miranda* warnings to Plaintiff, indicating Plaintiff was under arrest and in-custody.

83.    Moreover, after lethal force was used against Plaintiff, Deputy Wagner issued orders that Plaintiff show his hands out of the window. Plaintiff shouted several times that he could not show his hands because his hands were cuffed behind his back. Deputy Wagner denied Plaintiff aid unless he could find a way to show his restrained hands outside the window.

84.    Plaintiff was left unaided for over twenty (20) minutes despite numerous requests for help.

85.    By failing to intervene, Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars and Reyna additionally violated Plaintiff's constitutional rights.

86.    Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner's failure to intervene deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

87.    Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner's knew that failure to intervene could result in further significant injury and the unnecessary and wanton infliction of pain but disregarded their duty to intervene thereby causing Plaintiff bodily harm, conscious pain and suffering, and extreme mental and emotional anguish.

**SECOND AMENDED COMPLAINT**

88. Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellar, Reyna, and Wagner's omissions as described herein resulted in the further deprivation of these constitutional rights.

89. Defendants, while acting in the performance of their official duties as sheriff's deputies for the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden, used force against Plaintiff that was unjustified, entirely unreasonable, and thereby excessive, such that the failure to intervene caused further harm to Plaintiff.

90. Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that failure to intervene to prevent further injury and constitutional violation against Plaintiff violated clearly established law.

91. The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer life-altering injuries, extreme conscious pain and suffering, and severe mental and emotional anguish.

92. Defendants' conduct alleged herein was willful, wanton, malicious, intentional, and deliberate, and was done with a reckless disregard to the constitutionally protected rights, welfare, and safety of Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION – COUNT III
### (42 U.S.C. Section 1983)
### (Supervisory Liability)
### (Plaintiff MARQUIS JACKSON Against Defendants BATISTE, ROBERTS, and DOES 26-50)

93. Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

94.    On information and belief, the conduct of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, inclusive, individually and as sheriff's deputies of the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden, was ordered, ratified, and/or condoned by Defendants Sergeant Batiste, Sergeant Roberts, and DOES 26 through 50, inclusive.

95.    On information and belief, Defendants Sergeant Batiste, Sergeant Roberts, and DOES 26 through 50, inclusive, were the supervisory officers of Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, inclusive.

96.    On information and belief, Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, inclusive, were not disciplined for using unjustified deadly force and less-lethal force against Plaintiff, nor for failing to intervene, while he was handcuffed, detained in Defendant Hernandez's patrol car, and unarmed as confirmed by two pat-down searches and a third thereafter.

97.    Consequently, Plaintiff sustained physical, emotional, and financial injuries, whereby Plaintiff was subjected to extreme pain and suffering and mental and emotional anguish for which Plaintiff is entitled to recover damages.

98.    By perpetrating, sanctioning, tolerating, and ratifying the heinous and outrageous conduct and other grossly wrongful acts, Defendants, individually and as peace officers, acted with an intentional, reckless, and callous disregard for the rights of Plaintiff. Each of their actions and inactions was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive, and unconscionable to any person of normal sensibilities.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## **FOURTH CAUSE OF ACTION – COUNT IV**
### **(Negligence)**
### **(Plaintiff MARQUIS JACKSON Against Defendants HERNANDEZ, ROBERTS, BATISTE, RHEINHARDT, ZELLARS, WAGNER, REYNA, and DOES 1-25)**

99.     Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint, and the allegations set forth in paragraphs 81 through 90.

100.    Defendants Hernandez and Roberts, as public employees, are liable for negligent pre-arrest tactics that precede the use of deadly force. Defendants Hernandez and Roberts fired more than twenty-two lethal rounds at Plaintiff while handcuffed and detained in Defendant Hernandez's patrol car. Each trigger pull constitutes a use of deadly force.

101.    Analogously, Defendants Rheinhardt and Zellars, as public employees, are also liable for pre-arrest tactics that precede the use of less-lethal force. Defendants Rheinhardt and Zellars fired several non-lethal rounds at the patrol car Plaintiff was detained in while he was handcuffed and unarmed. Each trigger pull constitutes a use of force.

102.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, acted negligently in their uses of force against Plaintiff, including but not limited to: (a) failing to warn that lethal force would be used against Plaintiff; (b) failing to assess the situation after Plaintiff had been patted down for weapons twice before being handcuffed and detained in Defendant Hernandez's patrol car; (c) failing to notify other deputies that Plaintiff had already been searched for weapons twice and was confirmed to be unarmed; (d) failing to check the status of Plaintiff's wellbeing for nearly twenty (20) minutes after nearly two dozen bullets were shot into the patrol car that Plaintiff was detained in; (e) failing to assess the situation before shooting several non-lethal rounds at the

patrol car despite Plaintiff being handcuffed, unarmed, and already subjected to twenty-two lethal rounds just minutes before; (f) failing to give any warnings and/or commands before exercising such a high level of force; and (g) failing to release Plaintiff from custody after confirming Plaintiff was unarmed, complied with deputies' commands, and there was no signed affidavit to proceed with an arrest.

103.  Defendants knew, or should have known, that shooting dozens of bullets at a person who is detained in a patrol car, handcuffed, and known to be unarmed will likely cause serious, life-altering injuries. Moreover, Defendants knew, or should have known, that a person surrounded by patrol cars and armed deputies, detained and handcuffed inside a patrol car has no means to flee, nor made any attempt to flee, such as Plaintiff here, cannot pose a credible threat to the safety of any deputy or other, and cannot reasonably be considered a flight risk. Furthermore, Defendants knew, or should have known, that ever shot fired from their weapon constitutes deadly force, including less lethal uses of force, and that using deadly force and further less lethal force against an unarmed person who poses no threat to the safety of officers or others, such as Plaintiff, is unreasonable, excessive, and unconstitutional.

104.  Additionally, Defendant Deputies are liable for failing to intervene when fellow deputies violate the constitutional rights of another.

105.  Moreover, Defendant Deputies negligently failed to intervene when Plaintiff's Fourth Amendment rights were violated by Defendants when: (a) Defendants fired more than twenty-two bullets at the patrol car Plaintiff was handcuffed and detained in; (b) Defendants fired several less-lethal rounds at the patrol car Plaintiff was handcuffed and detained in; and (c) Defendants discharged lethal and less lethal rounds at an unarmed man, handcuffed, and detained in a deputy's patrol car.  Defendant Deputies knew, or should have known, that failing to intervene when a fellow deputy violates the constitutional rights of another, through

use of excessive force or otherwise, is a breach of duty and exposes them to liability. It was clear that the use of force was excessive and was harming Plaintiff, yet none of the Defendant Deputies intervened, or even attempted to intervene, at any point, which resulted in a continued deprivation of Plaintiff's rights under the Fourth Amendment, and subjected Plaintiff to physical harm and immense mental and emotional suffering.

106.    Furthermore, Defendants Aden, Roberts, Batiste and DOES 26-50, inclusive, are liable for their failure to adequately supervise, hire, train, and/or discipline deputies, including Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, inclusive, whereby Defendants Aden, Roberts, Batiste and DOES 26-50, knew, or in the exercise of reasonable care should have known, that Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, acted negligently when Defendants Hernandez, Roberts, Rheinhardt, and Zellars, fired dozens of lethal and less-lethal rounds from their department-issued handguns and shotguns at Plaintiff while he was unarmed, handcuffed, and detained in a marked patrol car, and by failing to intervene when other Deputies took action against Plaintiff that was in clear violation of his constitutional rights and contrary to department training and policy.

107.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, and Wagner owed Plaintiff a special duty of care once Plaintiff was taken into custody and put into a zone of risk. Defendants therefore had a duty to exercise reasonable care as to Plaintiff after he was taken into custody and placed into the back of the patrol car.

108.    Plaintiff was grievously harmed; Defendants' negligence was a substantial factor in causing his harm.

109.   Defendants' negligent conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION – COUNT V
### (Negligence)
### (Plaintiff MARQUIS JACKSON Against Defendant ADEN)

110.   Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint, and the allegations set forth in paragraphs 81 through 90.

111.   The present action is brought pursuant to the Florida Tort Claims Act, and state law, for the injuries caused by the acts and omissions of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive. Under Florida's doctrine of respondeat superior, a local government may be held liable for an intentional tort, such as excessive force or battery, as long as the employee was acting in the course and scope of his employment and not with bad faith, malicious purpose, or wanton and willful disregard of the plaintiff's rights. *N.R. by Ragan v. School Board of Okaloosa County, Florida*, 418 F.Supp.3d 957 (N.D. Fla. 2019). To the extent Defendants Deputies' conduct was not in bad faith, Defendant Sheriff Aden, in his official capacity as Sheriff of the Okaloosa County Sheriff's Office, is liable for the acts and omissions of Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, under the theory of respondeat superior, including but not limited to the illegal and excessive deadly force and non-deadly force used against Plaintiff, and negligent omissions, i.e. the failure to intervene, as said acts and omissions occurred during the course and scope of their employment as sheriff's deputies with the Okaloosa County Sheriff's Office under the control

and command of Defendant Sheriff Aden. These actions and omissions, as forth in the allegations of this Complaint, directly and proximally caused the deprivation of Plaintiff's civil rights and the injuries sustained therefrom.

112.    Defendants' conduct caused Plaintiff to experience pain and suffering, and severe emotional distress, fear, trauma and humiliation, and further damages according to proof at the time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION – COUNT VI
### (Assault/Battery)
### (Plaintiff MARQUIS JACKSON Against Defendants HERNANDEZ, ROBERTS, BATISTE, RHEINHARDT, ZELLARS, REYNA, WAGNER and DOES 1-50)

113.    Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

114.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Reyna, Wagner, and DOES 1-25, touched Plaintiff with the intention and purpose to harm or offend him when Defendants egregiously and unjustifiably shot nearly two dozen bullets into the patrol car and at Plaintiff who was unarmed, handcuffed, and detained in the locked patrol car.

115.    Defendants Rheinhardt and Zellars further touched Plaintiff with the intention and purpose to harm or offend him when Defendants Rheinhardt and Zellars egregiously and unjustifiably shot an additional several less-lethal rounds at the patrol car before confirming Plaintiff's wellbeing after deadly force was used, and while Plaintiff was still known to be unarmed, handcuffed, and detained in the patrol car.

116.    Defendants further touched Plaintiff with the intention and purpose to harm or offend him when Defendants egregiously and unjustifiably transported

Plaintiff from the hospital to the Okaloosa County Courthouse, where Plaintiff was detained for several hours before he was released with no charges.

117.    Defendants' conduct was neither privileged nor justified under any statute, common-law, or policy.

118.    Plaintiff did not consent to the touching and was severely harmed by it.

119.    A reasonable person in Plaintiff's situation would have been offended by the touching.

120.    Defendants' conduct caused Plaintiff to experience pain and suffering, and severe emotional distress, fear, trauma and humiliation, and further damages according to proof at the time of trial.

121.    The conduct of Defendants was willful, malicious, intentional, deliberate, and done with a reckless disregard to the constitutionally protected rights, welfare, and safety of Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION – COUNT VII
### (Assault/Battery)
### (Plaintiff MARQUIS JACKSON Against Defendant ADEN)

122.    Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

123.    The present action is brought pursuant to the Florida Tort Claims Act, and state law, for the injuries caused by the acts and omissions of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive. Under Florida's doctrine of respondeat superior, a local government may be held liable for an intentional tort, such as excessive force or battery, as long as the employee was acting in the course and scope of his employment and not with bad faith, malicious purpose, or wanton and willful disregard of the plaintiff's rights. *N.R. by Ragan v. School Board of Okaloosa County,*

*Florida*, 418 F.Supp.3d 957 (N.D. Fla. 2019). To the extent Defendants Deputies' conduct was not in bad faith, Defendant Sheriff Aden, in his official capacity as Sheriff of the Okaloosa County Sheriff's Office, is liable for the acts and omissions of Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, under the theory of respondeat superior, including but not limited to the illegal and excessive deadly force and non-deadly force used against Plaintiff, and negligent omissions, i.e. the failure to intervene, as said acts and omissions occurred during the course and scope of their employment as sheriff's deputies with the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden. These actions and omissions, as forth in the allegations of this Complaint, directly and proximately caused the deprivation of Plaintiff's civil rights and the injuries sustained therefrom.

124. Defendants' conduct caused Plaintiff to experience pain and suffering, and severe emotional distress, fear, trauma and humiliation, and further damages according to proof at the time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION – COUNT VIII
### (Intentional Infliction of Emotional Distress)
### (Plaintiff MARQUIS JACKSON Against Defendants HERNANDEZ, ROBERTS, BATISTE, RHEINHARDT, ZELLARS, REYNA, WAGNER and DOES 1-50)

125. Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

126. Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct as described herein was intentional and/or reckless.

127. Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct was outrageous.

128.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct exceeded all bounds of decency, and is to be regarded as odious and utterly intolerable in a civilized community.

129.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was consciously present when the conduct occurred.

130.    Plaintiff suffered severe emotional distress from Defendant Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's harassment and heinous conduct.

131.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct as described herein was a substantial factor in causing Plaintiff's severe emotional distress.

132.    Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct caused Plaintiff to suffer physical injury, emotional distress, conscious pain and suffering, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

133.    The conduct of Defendants was willful, malicious, intentional, deliberate, and done with a reckless disregard to the constitutionally protected rights, welfare, and safety of Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### NINTH CAUSE OF ACTION – COUNT IX
**(Intentional Infliction of Emotional Distress)**
**(Plaintiff MARQUIS JACKSON Against Defendant ADEN)**

134.    Plaintiff hereby realleges and incorporates by reference herein the factual allegations set forth in paragraphs 24 through 60 of this Complaint.

**SECOND AMENDED COMPLAINT**

135.   The present action is brought pursuant to the Florida Tort Claims Act, and state law, for the injuries caused by the acts and omissions of Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive. Under Florida's doctrine of respondeat superior, a local government may be held liable for an intentional tort, such as excessive force or battery, as long as the employee was acting in the course and scope of his employment and not with bad faith, malicious purpose, or wanton and willful disregard of the plaintiff's rights. *N.R. by Ragan v. School Board of Okaloosa County, Florida*, 418 F.Supp.3d 957 (N.D. Fla. 2019). To the extent Defendants Deputies' conduct was not in bad faith, Defendant Sheriff Aden, in his official capacity as Sheriff of the Okaloosa County Sheriff's Office, is liable for the acts and omissions of Defendant Deputies Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, Reyna, and DOES 1 through 25, inclusive, under the theory of respondeat superior, including but not limited to the illegal and excessive deadly force and non-deadly force used against Plaintiff, and negligent omissions, i.e. the failure to intervene, as said acts and omissions occurred during the course and scope of their employment as sheriff's deputies with the Okaloosa County Sheriff's Office under the control and command of Defendant Sheriff Aden. These actions and omissions, as forth in the allegations of this Complaint, directly and proximately caused the deprivation of Plaintiff's civil rights and the injuries sustained therefrom.

136.   Defendants Hernandez, Roberts, Batiste, Rheinhardt, Zellars, Wagner, and Reyna's conduct caused Plaintiff to suffer physical injury, emotional distress, conscious pain and suffering, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

137.   Plaintiff hereby demands a jury trial in this civil rights action.

1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;

2. For special damages in a sum according to proof;

3. For punitive damages in a sum according to proof as to Defendants HERNANDEZ, ROBERTS, BATISTE, RHEINHARDT, ZELLARS, WAGNER, REYNA, and DOES 1-50;

4. For reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988;

5. For any and all statutory damages allowed by law;

6. For cost of suit herein incurred; and

7. For such other and further relief as the Court deems just and proper.

Dated: February 11, 2025            **BURRIS, NISENBAUM, CURRY, LACY**

`

_____*/s/ Julia N. Quesada*_____
DEWITT M. LACY, Esq. (SBN 258789)
JULIA N. QUESADA, Esq. (SBN 337872)
LENA P. ANDREWS, Esq. (SBN 342471)
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 90212
P: (310) 601-7070
F: (844) 273-6873
E: dewitt@bncllaw.com
E: julia.quesada@bncllaw.com
E: lena.andrews@bncllaw.com

*Attorneys for Plaintiff, Marquis Jackson*